# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 18, 2018

Plaintiff-Appellee,

v

No. 339261
Macomb Circuit Court
LC No. 2016-004380-FH

THOMAS CHRISTOPHER WERNER,

Defendant-Appellant.

Before: M. J. KELLY, P.J., and MARKEY and FORT HOOD, JJ.

PER CURIAM.

Defendant was convicted by a jury of second-degree criminal sexual conduct (CSC II), MCL 750.520c(1)(a) (person under 13 years of age), and was sentenced to 38 to 180 months' imprisonment. He now appeals as of right and we affirm.

The 12-year-old victim, NH, testified that defendant grabbed her breasts and that he also poked her breasts and her vagina (through her clothing) and bit her inner thigh. The defense argued that defendant did not commit these sexual touchings and that the only reason NH had made these claims was because she and her mother wanted to get defendant and his girlfriend thrown out of the house they shared so that they could get defendant's bedroom.

Defendant first argues that the jury instructions were flawed because, although he believes the prosecution maintained that there were at least four possible incidents that could have supported the charge, the jurors were not required by the trial court's instruction to agree on any one of the possible incidents as the basis for their verdict. Defendant did not request a specific instruction regarding juror unanimity; accordingly, only the standard unanimity instruction [M Crim JI 3.11(3)] was given.[1] Defense counsel also expressly approved the trial

---

[1] The trial court instructed the jury:

A verdict in a criminal case must be unanimous. In order to return a verdict it is necessary that each of you agree on that verdict. In the jury room you will discuss the case among yourselves, but ultimately each of you will have to make up your own mind. Any verdict must represent the individual, considered judgment of each juror.

court's instructions. Defendant therefore waived consideration of the claim that the trial court's instructions were improper. *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011).[2] Nevertheless, defendant also argues that he received ineffective assistance of counsel. As this Court observed in *People v Eisen*, 296 Mich App 326, 329-330; 820 NW2d 229 (2012), this Court will review a waived claim to determine if an associated claim of ineffective assistance of counsel has merit.

With regard to defendant's claim alleging ineffective assistance of counsel, defendant failed to move for a new trial or a *Ginther*[3] hearing, so his claim is not preserved and any review is limited to mistakes apparent from the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Whether defendant received the effective assistance of counsel guaranteed him under the United States and Michigan Constitutions "is a mixed question of law and fact." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). The Court of Appeals will review "for clear error the trial court's findings of fact [if any], and review[ ] de novo questions of constitutional law." *Id*.

> [E]stablishing ineffective assistance requires a defendant to show (1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant. Prejudice means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. [*People v Randolph*, ___ Mich ___, ___; ___ NW2d ___ (2018) (Docket No. 153309); slip op at 6 (footnotes and citation omitted).]

---

[2] The Michigan Supreme Court in *Kowalski*, 489 Mich at 503, stated:

> [B]ecause defense counsel here explicitly and repeatedly approved the instruction, defendant has waived the error. This Court has defined "waiver" as "the intentional relinquishment or abandonment of a known right." "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver. [Footnotes omitted.]

The *Kowalski* Court also noted:

> The Court of Appeals has consistently held that an affirmative statement that there are no objections to the jury instructions constitutes express approval of the instructions, thereby waiving review of any error on appeal. [*Id*. at 505 n 28.]

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Defendant cites *People v Quinn*, 219 Mich App 571; 557 NW2d 151 (1996), as authority for his jury unanimity argument. The *Quinn* decision involved a charge of receiving and concealing stolen property. The basis for this charge was either the theft of a set of blueprints in the early 1980s or the theft of setup sheets in the early 1990s. *Id*. at 576. This Court stated that if accepted by the jury, these two thefts would "support two separate convictions of receiving and concealing stolen property in excess of $100, but would not support a finding of one single crime committed by alternative means." Therefore, "[b]ecause only one count of receiving and concealing stolen goods was submitted to the jury, defendants' right to a unanimous jury verdict was violated." *Id*.

The *Quinn* situation, involving two completely separate offenses occurring approximately 10 years apart, is inapplicable to the present situation. NH testified that defendant grabbed her breasts from behind while she was doing the dishes; she claimed that on another occasion defendant poked her breasts and vagina, and also bit her inner thigh near her vagina. The prosecutor based the CSC II charge on four alternate sexual *contacts*, three of which appear to have occurred during the same *incident*.[4]

When discussing the final instructions, M Crim JI 20.02 was modified (based on NH's testimony) to provide, alternatively, that the prosecutor must prove defendant touched either NH's breasts, her inner thigh, or her vagina. In recounting NH's testimony, during her closing argument the prosecutor recalled that NH claimed he had "grab[bed] her boobs," he bit her inner thigh, he poked her breasts, and then he poked her vagina. The prosecutor then reiterated: "What I have to prove beyond a reasonable doubt is first that the Defendant intentionally touched [NH's] inner thigh or vagina or breasts, or clothing covering that area." And ultimately the trial court instructed the jury that to find guilt it must determine "that the Defendant intentionally touched [NH's] inner thigh or vagina or breasts or the clothing covering that area." These alternatives reflected the conduct defendant was alleged to have committed during the wrestling incident and the incident where defendant allegedly approached NH from behind and grabbed her breasts.

In *People v Johnson*, 406 Mich 320, 326, 330; 279 NW2d 534 (1979), the Michigan Supreme Court held that it was not proper to charge multiple counts of criminal sexual conduct based on a single sexual penetration where there were multiple statutory factors. Rather, the Court held:

---

[4] With regard to the facts presented by this case, MCL 750.520c(1)(a) prohibits a person from engaging in sexual contact with another person who is under 13 years of age. "Sexual contact" is defined as "the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for (*i*) Revenge[;] (*ii*) To inflict humiliation[; or ] (*iii*) Out of anger." MCL 750.520a(q). " 'Intimate parts' includes the primary genital area, groin, inner thigh, buttock, or breast of a human being." MCL 750.520a(f).

The fact that a sexual penetration happens to be accompanied by more than one of the aggravating circumstances enumerated in the statute may well ease the burden upon the prosecution in attaining a conviction under MCL 750.520b; MSA 28.788(2), but it may give rise to only one criminal charge for the purposes of trial, conviction, and sentencing. [*Johnson*, 406 Mich at 331.]

Similarly, in *People v Goold*, 241 Mich App 333, 338; 615 NW2d 794 (2000), this Court considered a situation where the defendant was charged with two counts of first-degree CSC and two counts of third-degree CSC. The third-degree CSC charges were based on the same conduct with two statutory alternatives used to support the separate counts. *Id*. This Court held that while the prosecutor could charge the defendant with third-degree CSC using statutory alternatives, it could not charge him with separate counts of third-degree CSC. *Id*. at 342-343. Thus, "the prosecutor must charge a defendant under a single count using alternative theories, but the prosecutor does not have to elect one theory over the other." *Id*. at 343. In this case there were multiple aggravating circumstances (touching the victim's breasts, her vagina, and her inner thigh), the prosecutor argued these alternatives, and the court instructed the jury using those alternatives as the basis for one charge of CSC II. Pursuant to *Johnson* and *Goold*, this was proper.

*People v Cooks*, 446 Mich 503; 521 NW2d 275 (1994), supports this conclusion. There, the defendant allegedly committed three acts of anal penetration on a 10-year-old on three successive days. *Id*. at 506-507. The jury found the defendant guilty of one count of CSC II. *Id*. at 509. Citing cases from the United States Supreme Court, federal Courts of Appeal, and state courts, the Michigan Supreme Court held that the trial court's use of a general unanimity instruction was adequate given the pattern of conduct engaged in by the defendant. The Court stated:

> We are persuaded by the foregoing federal and state authority that if alternative acts allegedly committed by defendant are presented by the state as evidence of the actus reus element of the charged offense, a general instruction to the jury that its decision must be unanimous will be adequate unless (1) the alternative acts are materially distinct (where the acts themselves are conceptually distinct or where either party has offered materially distinct proofs regarding one of the alternatives), or (2) there is reason to believe the jurors might be confused or disagree about the factual basis of defendant's guilt.[28]

_____

[28] We believe this approach is particularly apt in cases such as this one, where there is an allegation of a pattern of sexual penetrations committed against a child who may have difficulty remembering distinct facts that were peculiar to each alleged incident of sexual misconduct. Indeed, the court in [*People v Winkle*, 206 Cal App 3d 822; 253 Cal Rptr 726 (1988)], not only held that a specific unanimity instruction was not required in these circumstances, it concluded that such an instruction should not be given:

Since at trial no attempt was made to distinguish the acts[,] . . . the jury had no basis on which to distinguish between the acts about which [the victim] testified.

In a situation in which a very young child testifies about a series of similar molestations without identifying any specific dates, the unanimity instruction should not be given as it would be confusing for the jury to be given an instruction requiring them to agree on a specific act, when there is no specific act for them to agree upon. . . . Here, the jury's verdict indicates that the jurors believed [the victim], not [the defendant]. [*Winkle*, 206 Cal App 3d at 830.] [*Cooks*, 446 Mich at 524.]

The *Cooks* Court concluded:

[T]he prosecutor here was unable to specify in the information the precise dates of the alleged penetrations, other than "on or about Jan, 1989." . . . [T]he child victim then testified about identical incidents of anal penetration on three successive days, consistent with the charge in the information. Absent any indication of juror confusion or disagreement over the existence of any of the alternative acts, a specific unanimity instruction is not required on these facts.

* * *

In conclusion, when the state offers evidence of multiple acts by a defendant, each of which would satisfy the actus reus element of a single charged offense, the trial court is required to instruct the jury that it must unanimously agree on the same specific act if the acts are materially distinct or if there is reason to believe the jurors may be confused or disagree about the factual basis of the defendant's guilt. When neither of these factors is present, as in the case at bar, a general instruction to the jury that its verdict must be unanimous does not deprive the defendant of his right to a unanimous verdict. [*Cooks*, 446 Mich at 529-530; footnotes omitted.]

In this case, the two main incidents involving sexual touching were somewhat different, but were not materially distinct; they both involved defendant touching NH's body, and in particular, her breasts. The information itself charged simply that defendant had sexual contact with NH while she was under 13 years of age and he was over 17 years old; it did not specify the manner in which this offense was committed. Defendant did not seek to differentiate the incidents, or admit one while contesting the other, and he did not present materially distinct evidence with regard to one incident or the other; instead, defendant claimed that none of the touchings happened. The trial court's instructions regarding the offense simply required the jury to find that defendant "intentionally touched [NH]'s inner thigh or vagina or breasts or the clothing covering that area." Differentiation between the incidents was not an important consideration in this case. Moreover, there is no evidence that the jurors were confused or that they disagreed about the factual basis of defendant's guilt.

In *People v Gadomski*, 232 Mich App 24; 592 NW2d 75 (1998), the defendant claimed, as in this case, that he was denied his right to a unanimous jury verdict because of the trial court's first-degree CSC instructions. The trial court instructed the jury that it could find defendant guilty if it found that defendant sexually penetrated the victim and that one of three aggravating circumstances occurred; the court also gave a general unanimity instruction. *Id*. at 29. The defendant argued a special unanimity instruction should have been given that would have required the jurors to agree on the existence of at least one of the aggravating circumstances. *Id*. at 29-30. After acknowledging that "[c]riminal defendants are guaranteed a unanimous jury verdict under the state constitution," and that "trial courts are required to give proper instructions regarding the unanimity requirement," this Court stated:

> In some circumstances, a general unanimity instruction such as the one given in this case is not adequate to ensure a defendant's right to a unanimous jury verdict. For instance, the Michigan Supreme Court has held that when the prosecution offers evidence of multiple acts by a defendant, each of which would satisfy the actus reus of a single charged offense, the trial court is required to instruct the jury that it must unanimously agree on the same specific act if the acts are materially distinct or if there is reason to believe the jurors may be confused or disagree about the factual basis of the defendant's guilt. [*Gadomski*, 232 Mich App at 30, citing *Cooks*, 446 Mich at 530.]

This Court concluded that a specific unanimity instruction was not required, stating:

> Michigan criminal juries are not required to unanimously agree upon every fact supporting a guilty verdict. See, e.g., *People v Espinosa*, 142 Mich App 99, 105; 369 NW2d 265 (1985) (explaining that, in theory, a defendant could be convicted of murder by a jury in which six members were of the opinion that the defendant shot the victim acting as the principal, and the other six members were of the opinion that he aided and abetted another). More specifically, it is well settled that when a statute lists alternative means of committing an offense, which means in and of themselves do not constitute separate and distinct offenses, jury unanimity is not required with regard to the alternate theories. . . . That was the case here. Where there is a single sexual penetration, the various aggravating circumstances listed in MCL 750.520b . . . constitute alternate means of proving a single CSC I offense and would not support convictions of separate and distinct CSC I offenses. See *People v Willie Johnson*, 406 Mich 320, 330-331; 279 NW2d 534 (1979). Accordingly, defendant would have been properly convicted of CSC I even if some of the jurors believed that he committed the offense solely on the basis of one aggravating circumstance, while the rest of the jurors believed that he committed the offense solely on the basis of another one of the aggravating circumstances.
>
> In sum, we hold that when a defendant is tried on a charge of CSC I, and more than one aggravating circumstance is supported by the facts, it is not error for the trial court to instruct the jury, in the alternative, regarding each of the applicable aggravating circumstances alleged by the prosecution. In this case,

because the trial court's instructions were legally correct, manifest injustice will not result from our failure to grant the relief requested. [*Gadomski*, 232 Mich App at 31-32 (footnote omitted).]

In this case, defendant did not attempt to differentiate among the four sexual contacts that NH alleged. Instead he claimed that no sexual contact occurred. The jury was therefore not called on to select one incident or the other as the basis for the conviction. Defendant's claim of ineffective assistance of counsel is unavailing because counsel is presumed to be effective and decisions regarding trial strategy will not be second-guessed. *People v Williams*, 240 Mich App 316, 331-332; 614 NW2d 647 (2000). Trial counsel made a strategic decision, based on consultation with defendant, to claim that NH was lying and had made up the claims of sexual contact; that is, he chose an "all-or-nothing" defense. Given this choice of defense, the failure to request a special jury unanimity instruction—or to object to the failure to give such an instruction—was a valid decision of trial strategy. Defendant did not request an evidentiary hearing regarding this claim and has failed to overcome the presumption of effective assistance. Nor has defendant demonstrated that, given his choice to pursue an "all-or-nothing" defense, the result of the trial would have been different had a special unanimity instruction been requested and given.

Defendant next claims that his counsel was ineffective because (1) he did not have defendant testify, (2) he failed to object to repeated hearsay, and (3) he introduced NH's suicide note. With respect to the first claim, defendant argues that it was critically important for him to testify to rebut NH's allegations. However, following a consultation between defendant and his counsel during the presentation of their case, the following colloquy occurred:

> *Q* [Trial Court]. Okay. Court's back in session, we can all be seated. Before we bring back the jury let me ask [defense counsel], has your client made a decision?
>
> *A* [Defendant's counsel]. Yes.
>
> *Q.* And?
>
> *A.* We made a decision [defendant] is not going to testify, though I'd like to make a record of it.
>
> *Q.* Okay. [Defendant], why don't you come on up here and stand in front of the bench with your lawyer? I understand, sir, that you have made a decision that you have decided that you will not testify?
>
> *A* [Defendant]. That's correct, Your Honor.
>
> *Q.* Okay. [] [W]hy don't you voir dire your client as to, well make a record, go on.
>
> *Q* [Defense counsel]. All right. We had an opportunity to discuss this matter in a private room of the Court?

-7-

*A.* [Defendant].  Correct.

*Q.* And we went through out [sic – our] options, would you agree with me?

*A.* Correct.

*Q.* We got to weigh our pros and cons.

*A.* Correct.

*Q.* And we listened to the testimony of all of the witnesses here?

*A.* Yes.

*Q.* And you understand you have the right absolutely to testify and absolutely not to testify, you acknowledge that right?

*A.* Correct.

*Q.* And given everything you've heard it is your decision, I have made no threats or promises regarding one way or the other?

*A.* Correct.

*Q.* All right.  (Inaudible).

*Q* [The Court].  You realize that if you were to testify that your credibility would be judged as it would be with every other witness.  You've heard the instructions as to how the jury is to take that into account so that the same instruction would apply to you.  Do you understand that?

*A.* Yes.

*Q.* Okay.  And I think you also understand that if you do not testify there is a jury instruction that tells the jury that they are not to draw any adverse inference from that, they are not to hold that against you in any way, you understand that as well?

*A.* Yes.

*Q.* And you've been talking now for approximately 20 minutes with your attorney about his decision, is it a very firm decision in your mind?

*A.* Yes.

*Q.* Okay.  I'm satisfied, thank you.

This inquiry establishes that it was defendant's informed decision to waive his right to testify. A waiver of a right extinguishes any claim of error. *People v Carter*, 462 Mich 206; 612 NW2d 144 (2000).

> Waiver has been defined as "the 'intentional relinquishment or abandonment of a known right.'" . . . It differs from forfeiture, which has been explained as "the failure to make the timely assertion of a right." . . . "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." . . . Forfeiture, on the other hand, does not extinguish an "error." . . . [*Carter*, 462 Mich at 215 (citations omitted).]

Therefore, there is no error for this Court to review. Moreover, as the prosecutor points out, there has been no evidentiary hearing concerning this claim. Defendant has not even provided an affidavit explaining how his counsel failed to provide effective assistance. "There is no factual basis for a conclusion that counsel's performance was constitutionally deficient and undermines confidence in the reliability of the verdict." *People v Mitchell*, 454 Mich 145, 162-163; 560 NW2d 600 (1997). Defendant's statements at trial clearly indicate that this was his decision, rather than the decision of his counsel. Defendant, in effect, is claiming that his counsel was ineffective for failing to prevent defendant from making a poor—albeit informed—choice. "[D]efendant must establish a valid claim of ineffective assistance in order for him to be entitled to relief on his waived claim[]. . . ." *People v Traver*, ___ Mich ___, ___; ___ NW2d ___ (2018) (Docket No. 154494), slip op p 16 n 10. Defendant made the decision not to testify after consulting with his counsel and acknowledges that, even if he had testified, the jury may not have believed him. Defendant has failed to establish a valid claim of ineffective assistance because he cannot prove that his counsel made a prejudicial, outcome-determinative mistake by allowing defendant to exercise his personal constitutional right not to testify or that a mistake would have been outcome determinative. Defendant is not entitled to any relief.

Defendant also claims that trial counsel's strategic decision to admit NH's suicide note was a prejudicial error. Once again, there is no post-trial factual record to support this claim and this Court's review is limited to the existing record. *People v Cox*, 268 Mich App 440, 453; 709 NW2d 152 (2005). What the existing record shows is that *defendant sought the admission of the suicide note.*

The victim's sister disclosed that in the month before the trial NH wrote a note indicating that she wanted to commit suicide. According to the sister, NH's mother looked through NH's notebook and found the note; she called the sister and took a photograph of the note with her cell phone. Subsequently, NH ripped up the note. The photograph was found on the sister's cell phone. The trial court asked both parties if they wanted the note admitted into evidence. Defense counsel responded: "I need an extra minute with my client, before I make that determination." Subsequently, when questioning the sister about the note, defendant supplied his counsel with copies of text messages, but then stated on the record: "I gave you the wrong one." This shows that defendant was actively assisting his counsel in exploring the suicide note; this was not something that trial counsel was pursuing on his own without input from defendant. The trial court cautioned defense counsel that this note could prove to be detrimental to the defense.

Counsel, despite recognizing that it could be a "double-edged sword," nonetheless stated that he "want[ed] it in now at this point" and he therefore wanted to recall the sister and NH to cross-examine them about the note. Defense counsel expressed concern because he had not seen a copy of the note. He admitted that there could be evidentiary issues within the note, but since it had been mentioned to his private investigator—but never provided by the prosecutor—he wanted to see what was in the note. The trial court agreed it was reasonable to review the note:

> Well, because, I think the answer is obvious, because you have a good private investigator, because you have a young woman who was traumatized by what happened, who knowing that she's going to have to testify is reliving the whole thing. And I'll grant you this, it could be that a person goes through that kind of turmoil because they were sexually assaulted and it has emotionally scarred them to the point where they're thinking about suicide, or it's possible that a person could have brought false charges and it has emotionally scarred them to the point that they're thinking about committing suicide. I can't, I can't say which, and so you're right. But let's take a look at the note.

> I would suggest to the both of you that it is, it is not sufficiently persuasive on either of those issues that it seems to me like it has to come into evidence. It is written a long time after the event, it is ambiguous unless something on its face points one way other [sic] the other. And right now it might be a more prejudicial than probative thing to get it in, no matter who wants to get it in and who wants to keep it out.

> But [defense counsel], I agree with you on the face of it that we should try to find it. And I'm going to ask the Detective in Charge if you could talk to [the sister] and find out if she's recovered that on her phone, or if you could also, I don't know if you could get a call in to [NH's mother]. Is she still in the building, do we know?

After reviewing the note and allowing trial counsel to question NH's sister about it, the trial court asked if it was relevant evidence. Defense counsel responded that the note was relevant, but before going forward, he wished to discuss the matter with his private investigator. The prosecutor argued that defendant was trying, in effect, to impeach NH without having asked her about the note, and that NH would have to be recalled first and asked about the note and then, depending on her answers, impeachment might be appropriate. The trial court pointed out that asking NH, based on the note, whether she had falsely accused defendant might get him an answer he did not want. The following day the prosecutor stipulated to the admission of the note. Defendant's counsel then stated that he wanted the sister and NH recalled for additional testimony concerning the note. The trial court ruled that the sister would be recalled and then, depending on her testimony, NH might also be recalled.

NH's sister indicated that the note contained a statement: "I'm sorry to everyone I hurt, but this is the only way I can settle things for me. Right, all you got [sic] what you wished for, your problem is solved." She agreed the note did not mention defendant or make any reference to the trial. She said NH explained that she wrote the note because she was being bullied at school, she could not handle going through the trial, she did not want to see defendant anymore, and "[s]he wanted it all to be done and over with and she felt that if she wrote this note and if she

just took her own life she wouldn't have to deal with anything anymore." She denied that NH had indicated "that none of this was true [a]nd that's why she was stressed out."

Following the sister's testimony, defense counsel initially stated that he no longer needed to recall NH. Subsequently, the parties and the trial court conversed off the record and NH was then recalled. She testified that the note was her "suicide letter." She explained that she "was tired of getting bullied and tired of having to come here and see [defendant] and having to point him out. And I was just tired of having to say what happened over and over again. I just wanted it out of my head." She denied that she felt this way because she made anything up. When questioned by defense counsel about why she would apologize in the note for hurting everyone, NH explained:

> I said I was sorry to my family and friends because I knew it would hurt them if I killed myself. And I said I [sic – they] got what they wanted because the people [who] were bullying me were trying to get to me and they did.

This lengthy summary indicates that it was clearly a strategic decision by the defense to pursue the issue of the suicide note. "Counsel's performance should be evaluated at the time of the alleged error without the benefit of hindsight." *People v Solloway*, 316 Mich App 174, 188; 891 NW2d 255 (2016). "A defendant must overcome a strong presumption that counsel's actions constituted sound trial strategy." *Id*. This Court has observed:

> Of significant importance, defendant provides no factual support and little, if any, legal support for his claims. Defendant simply argues that the stated actions fell below an objective standard of reasonableness and prejudiced his case. However, "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel[.]" *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Defendant failed to meet his burden here with respect to all of his allegations. Therefore, this Court could find, for this reason alone, that defendant's claims of ineffective assistance of counsel fail. [*Solloway*, 316 Mich App at 188-189 (citation omitted).]

This same conclusion applies in this case. There has been no evidentiary hearing in the trial court to produce a record to support his claim. The existing record indicates that the issue regarding admission of the suicide note was considered over two days, the note was the subject of additional testimony, the note was ultimately admitted by stipulation, and defendant appears to have concurred with that stipulation. As the trial court recognized, the note was ambiguous enough to conclude that it was possible that NH had written it because she could not handle the fact that she had falsely accused defendant. At the same time, it was more likely that she wrote it because of the trauma she was experiencing as a result of defendant's sexual assaults. The defense gambled that presenting the note to the jury and questioning NH about it would substantiate the defense claim that the incidents of sexual assault had been made up by NH. That proved not to be the case. Nevertheless, this was clearly a strategic decision, and "[t]he fact that defense counsel's strategy was ultimately unsuccessful does not render him ineffective." *Solloway*, 316 Mich App at 190. Moreover, defendant has not established that admission of this

evidence was error that "prejudiced [defendant] enough to deprive him of a fair trial." *Solloway*, 316 Mich App at 191. Defendant was still free to argue that the real reason behind the note was NH's anguish over falsely accusing him and counsel did in fact make that accusation in his closing argument. Defendant has therefore failed to establish ineffective assistance based on the admission of the suicide note.

Defendant finally claims that trial counsel was ineffective for failing to object to repeated hearsay. However, defendant fails to detail what statements he contends were hearsay. Without a discussion of the specific testimony defendant claims was hearsay, it is impossible for this Court to determine whether the testimony was in fact hearsay or whether it was admissible under one of the hearsay exceptions. Where defendant fails to adequately brief an issue, this Court considers the claim abandoned. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly,* 231 Mich App 627, 640–641; 588 NW2d 480 (1998).

Affirmed.


/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Karen M. Fort Hood